IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01455-NRN

ANNABELLE TRACY,

Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and
STATE FARM FIRE AND CASUALTY COMPANY,

Defendants.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT (ECF No. 54)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

I. **BACKGROUND**

This case was removed to this Court on May 23, 2024. This matter is before the Court on the consent of the Parties. *See* ECF No. 17 (Order of Reference of July 29, 2019). Trial is set for seven weeks from now, September 8, 2025, before Senior District Judge Christine M. Arguello, due to this Court's conflicting medical commitment.

This is an insurance dispute arising from an automobile accident. Plaintiff Anabelle Tracy contends she was injured in a motor vehicle collision with a negligent driver on June 28, 2019, and that the driver was underinsured. Plaintiff settled with the tortfeasor for his insurance policy limits prior to filing this action. Now, on July 21, 2025,

seven weeks before the trial, Plaintiff has moved to amend the Complaint to add a claim for statutory bad faith against the insurer defendants. *See* ECF No. 54.[1]

From the very beginning, the claims against Defendants State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively, "State Farm" or "Defendants") have been exclusively for underinsured motorist ("UIM") benefits under two insurance contracts. In other words, it was a breach of contract case only. There was never any claim for bad faith. *See* ECF No. 21 at 2 (September 12, 2024 Scheduling Order stating, "This is a case regarding payment of contractual underinsured motorist (UIM) benefits under several insurance policies between Plaintiff and Defendants."); ECF No. 42 at 4 (June 18, 2025 Final Pretrial Order making clear the Parties' and the Court's understanding that "[t]his is a claim for UIM benefits, and no bad faith, against two State Farm entities").

One significant issue, which the Court currently has under advisement and will be decided in a different order, will be the extent of UIM coverage available to Plaintiff: whether it is $250,000 or $2,250,000. *See* ECF Nos. 36 and 37 (summary judgment motions seeking rulings on whether Plaintiff should be deemed an insured under her father's $2,000,000 umbrella UIM policy). The Court is also considering various motions in limine seeking to limit the trial testimony of State Farm's expert witnesses. The Court heard argument on the motions for summary judgment and the motions in limine on July 14, 2025. ECF No. 53.

---

[1] Defendants have not filed a response but a judicial officer may rule on a motion at any time after it is filed. *See* D.C.COLO.LCivR 7.1(d).

Now, just weeks before trial, long after the discovery cutoff, after the deadline for expert disclosures, very long after the deadline for amendment of pleadings, and after the deadline for dispositive motions, Plaintiff moves to amend her complaint to add a claim for statutory bad faith under Colo. Rev. Stat. §§ 10-3-115(1)(A) and 10-3-1116(1). The addition of a statutory bad faith claim changes the nature of this case dramatically. Section 10-3-1116 provides that a first-party claimant, such as Plaintiff, whose claim has been unreasonably delayed or denied by an insurer may bring an action to recover reasonable attorney fees and court costs, and *two times the covered benefit*. This is in addition to the covered benefit and essentially becomes a claim for treble damages. So, a $250,000 breach of contract claim becomes, potentially, a $750,000 claim and, with attorney fees, may expand to become a million-dollar case. And if the covered benefit is not $250,000, but $2,250,000, then a $2.25 million dollar case becomes a six- or seven-million-dollar case.

The claimed basis for moving to amend to add a bad faith claim at this late date is that State Farm allegedly failed to conduct a thorough investigation of Plaintiff's claims and failed to pay undisputed amounts *after the litigation was filed*. For example, the proposed Second Amended Complaint alleges, as support for a bad faith claim, that State Farm "[o]nly requested medical records and bills on their own late into litigation and only to look for impeachment material, rather than to evaluate Ms. Tracy's claim for benefits." ECF No. 54-2 at 8.

Plaintiff emphasizes that the "duty of good faith and fair dealing continues unabated during the life of an insurer-insured relationship, including through a lawsuit or arbitration between the insured and the insurer." *Sanderson v. Am. Family Mut. Ins. Co.*,

3

251 P.3d 1213, 1217 (Colo. App. 2010). Plaintiff suggests in the proposed Second Amended Complaint that State Farm breached this duty by not continuing to adjust the claim after litigation was filed and by continuing to refuse payment.

But the duties of an insurance company change once litigation is filed. Under Colorado law, an insurer's derivative duty to negotiate, settle, or pay an insured's claim is suspended when two elements are present: (1) an adversarial proceeding is filed, and (2) a genuine disagreement as to the amount of compensable damages exists. *Rabin v. Fid. Nat. Prop. & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1113 (D. Colo. 2012); *see also Johnston v. Standard Fire Ins. Co.*, No. 20-cv-02106-CMA-MEH, 2022 WL 1225311, at *4 (D. Colo. Apr. 25, 2022) (where lawsuit had been filed, and there was disagreement regarding damages at the time suit was filed, insurer's duty to negotiate, settle, or pay claim is suspended).

Indeed, certain judges of this Court have found that, because the duties of the insurer change after litigation is filed, discovery of post-litigation adjustment efforts by the insurer are not relevant and not discoverable. *See Johnston*, 2022 WL 1225311, at *4. As Judge Arguello said in that case, "every decision made by the insurer [post-litigation] is logically done in the context of the pending lawsuit." *Id*. at *5.

In this case, there was never an undisputed amount that Defendants owed under the UIM policies at issue. Plaintiff is claiming significant damages from what the Defendants suggest was a minor traumatic brain injury or concussion. There is no suggestion that there was anything other than a legitimate dispute about the amount of damages. Presumably, that is why this case was initially filed and continued foras long as it did without any claim of bad faith.

Plaintiff asserts that

4

> Good cause exists for granting this Motion as Defendant's conduct in unreasonably delaying payment of UIM benefits occurred in the course of this ongoing litigation. Plaintiff will present this claim to a Jury [sic] without be benefit of conducting discovery and therefore, the Trial [sic] date can remain and Defendants will be prejudiced [sic] by the Plaintiff's request.

ECF No. 54 at 3. The Court presumes that Plaintiff made a typographical error in the last sentence of this passage and meant to write that Defendants "will **_not_** be prejudiced." But, in this case, the error is in fact the more accurate statement. Defendants are obviously *severely* prejudiced when an insurance lawsuit is litigated for more than a year as a breach of contract and then, shortly before trial, it threatens to be transformed into a bad faith suit, with a corresponding 200% or more increase in the potential exposure.

Had the case been pled as a bad faith case earlier on, the litigation may have been conducted differently. The fact that Plaintiff may choose to present her case to the jury without discovery is irrelevant to whether Defendants would have wanted to seek discovery. For example, Defendants may have probed more deeply with interrogatories or requests for admission Plaintiff's allegations about Defendants' supposed bad faith conduct. Defendants also may have chosen to retain an insurance bad faith expert to review the new allegations, the history of the case, and come to some opinions about whether Defendants' conduct could be deemed in bad faith according to insurance industry standards. Perhaps most important, Defendants may have sought to move for summary judgment on the question whether there exists a sufficient factual basis for a bad faith claim. By adding a significant claim like statutory bad faith at this late date, while asserting that the trial date need not be moved, Plaintiff would deny the

5

Defendants important procedural tools that they normally would be entitled to under the Federal Rules of Civil Procedure. This is obvious and undeniable prejudice.

## II. ANALYSIS

When a party seeks to amend pleadings after the deadline set in the scheduling order, the court's consideration is subject to a two-prong analysis. First, the party must establish good cause under Federal Rule of Civil Procedure 16(b)(4). *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). Second, only if the party establishes good cause does the court turn to whether amendment is proper under Federal Rule of Civil Procedure 15(a). *Id.* at 1242; *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001).

Rule 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch*, 771 F.3d at 1240 (citing *Pumpco*, 204 F.R.D. at 668). This burden is satisfied when a party seeks late amendment of a pleading when, for example, the party learns of new information in a deposition or that the governing law has changed. *Id.* "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order." *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000). The party seeking an extension is normally expected to show at least good faith on its part and some reasonable basis for not meeting the deadline. *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995).

6

If good cause to amend the scheduling order exists, the Court then turns to Rule 15(a), which states that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The standard under Rule 15(a) is "more lenient" than that under Rule 16(b). *Pumpco*, 204 F.R.D. at 668. However, the Court may exercise its discretion to deny a motion to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by previously allowed amendments, or futility of the amendment. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). Whether to allow amendment is within the trial court's discretion. *Burks v. Okla. Publ'g Co.*, 81 F.3d 975, 978–79 (10th Cir. 1996). The party contesting the motion to amend has the burden of proving that the amendment should be refused on one of these bases. *Acker v. Burlington N. & Santa Fe R. Co.*, 215 F.R.D. 645, 654 (D. Kan. 2003).

Here, the decision whether to grant Plaintiff's motion for leave to amend to add a statutory bad faith claim is an easy one. The motion will be denied.

First, Plaintiff has not demonstrated good cause under Rule 16. Plaintiff does not outline when she learned of the alleged bad faith conduct, or why she waited until just seven weeks before trial to add the bad faith claims, after expert reports were submitted, after discovery had closed, after the dispositive motion deadline, and after the Final Pretrial Conference, which occurred on June 18, 2025, and where the prospect of amendment was not mentioned.

Second, this late attempt to add a statutory bad faith claim obviously results in undue prejudice to Defendants by denying them procedural rights they would otherwise be entitled to under the rules. The trial date is firm, and a Senior United States District

7

Judge is making herself available to try the case. This was done specifically so that the trial date, previously set, would not have to be postponed due to this judge's scheduled medical procedure.

In addition, given the principle of the "suspension rule," where an insurer's duty to negotiate, settle, or pay a claim is suspended where a lawsuit has been filed and there is a dispute as to the damages, Plaintiff's efforts to base a bad faith claim solely on a post-litigation failure to further adjust the claim may well be futile. *See Stanley v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-00996-NYW-NRN, 2023 WL 2479953, at *13 (D. Colo. Mar. 13, 2023) (in summary judgment context, rejecting the assertion that a refusal by the insurer to provide information about evaluations completed during the litigation, or refusal to pay benefits after litigation was filed, could constitute unreasonable conduct or bad faith).

Indeed, this Court recently issued an order denying access to post-suit claim notes, on the ground that the suspension rule makes post-suit claim adjustment irrelevant:

> If there is fair debate about damages, causation, or coverage at the time the suit was filed, then the duty to negotiate and settle is suspended. The proof that there was a debatable question as to the insured's entitlement to payment must be determined using pre-suit evidence. After suit has been filed, an insured cannot send more information (for example, more medical records, expert reports, or employment information) and insist that the new information be evaluated and payment be made because now, in light of the new, post-suit, information, entitlement to payment is no longer debatable. To do so would reduce the suspension rule to a nullity. If the duty to negotiate, settle, and pay has been suspended by the filing of the lawsuit, then the provision of new information during the lawsuit supporting the insured's position cannot un-suspend (or restart) that duty.

*Cunningham v. Travelers Home and Marine Ins. Co.*, No. 24-cv-01806-SKC-NRN (D. Colo. June 27, 2025), ECF No. 59 at 9.

Ultimately, in this instance, the Court need not decide the question of futility. Because Plaintiff has failed to show good cause for the late amendment, because of the undue delay in seeking amendment, and because of the substantial and undue prejudice that would result to Defendants in allowing such a dramatic shift in the nature of the case at this late date, Plaintiff's Motion, ECF No. 54, will be **DENIED**.

Date: July 22, 2025

_____
N. Reid Neureiter
United States Magistrate Judge