IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01455-NRN

ANNABELLE TRACY,

Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and
STATE FARM FIRE AND CASUALTY COMPANY,

Defendants.

---

**ORDER ON PLAINTIFF'S MOTIONS IN LIMINE TO PRECLUDE AND LIMIT THE TESTIMONY OF RACHEL BASSE, M.D. (ECF No. 34) AND PRECLUDE AND LIMIT THE TESTIMONY OF HAL WORTZEL, M.D. (ECF No. 35).**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter is before the Court on the consent of the Parties. *See* ECF No. 17 (Order of Reference of July 29, 2019). Trial is set before Senior District Judge Christine M. Arguello.

This is an insurance dispute arising from an automobile accident. Plaintiff Anabelle Tracy contends she was injured in a motor vehicle collision with a negligent and underinsured driver on June 28, 2019. Plaintiff settled with the tortfeasor for his insurance policy limits prior to filing this action. The claim against Defendants State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively, "State Farm" or "Defendants") is exclusively for underinsured motorist ("UIM") benefits under the insurance contracts. There is no claim of bad faith. One significant issue, to be decided in a different order, is the extent of UIM coverage

available to the Plaintiff, whether it is $250,000 or $2,250,000. *See* ECF Nos. 36 and 37 (seeking rulings on whether Plaintiff should be deemed an insured under her father's $2,000,000 umbrella UIM policy).

The issue to be decided in this Order is the extent to which Defendants' two designated medical experts, Dr. Hal Wortzel and Dr. Rachel Basse, should be permitted to testify about Plaintiff's lack of injury; i.e., whether she is malingering or not. On June 9, 2025, Plaintiff filed two motions in limine. One motion seeks to exclude or limit the testimony of Dr. Basse. ECF No. 34. Plaintiff moves to limit six opinions of Dr. Basse, arguing primarily that Dr. Basse is speculating as to Plaintiff's credibility in opining that Plaintiff is exaggerating or falsifying her symptoms. The second motion is to exclude or limit the testimony of Dr. Wortzel. ECF No. 35. Plaintiff seeks to preclude Dr. Wortzel from providing 12 opinions involving Plaintiff's credibility and malingering, 12 opinions regarding Plaintiff's redactions, and 9 opinions involving his comments on injuries and providers commonly seen in litigation. Defendants responded to both motions on June 20, 2025. *See* ECF Nos. 44 & 47. The Court heard argument on the motions on July 14, 2025. ECF No. 53.

The heart of this dispute is the nature, extent, and persistence of Plaintiff's claimed injury. Plaintiff was involved in a motor vehicle collision during which she hit her head against the car door. As a result, she says she suffered a mild traumatic brain injury ("TBI")—in colloquial terms, a concussion. Plaintiff says the concussion has resulted in significant and permanent injury, including memory loss, confusion, and recurring debilitating migraine headaches.

2

### I. Standards for Admissibility of Expert Testimony

The Parties largely agree on the standards for admissibility of expert testimony. Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the rule makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area. Rather, the Court must "perform[ ] a two-step analysis." *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). After determining whether the expert is qualified, the proffered opinions must be assessed for reliability. *See id.*

In ruling on a Rule 702 motion, the district court has a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). To perform that function, a court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592–93). Where an expert witness relies on experience in stating opinions, the expert "'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that

3

experience is reliably applied to the facts.'" *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702, advisory committee notes). When examining an expert's method, however, the inquiry should not be aimed at the "exhaustive search for cosmic understanding but for the particularized resolution of legal disputes." *Daubert*, 509 U.S. at 597. It is the specific relationship between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute that renders testimony both reliable and relevant.

In addition to the witness having appropriate qualifications and methods, the proponent of the witness's opinions must demonstrate that the process by which the witness derived his or her opinions is reliable. *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008). "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*.

While the proponent of the challenged testimony has the burden of establishing admissibility, the proffer is tested against the standard of reliability, not correctness, *see Goebel v. Denver and Rio Grande Western R.R. Co.*, 346 F.3d 987, 991 (10th Cir. 2003); the proponent need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *Crabbe*, 556 F. Supp. 2d at 1221.

Assuming the standard for reliability is met, the Court must also ensure that the proffered testimony will assist the trier of fact. *See Kumho Tire*, 526 U.S. at 156; *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122–23 (10th Cir. 2006). "Relevant expert testimony must logically advance[ ] a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (quotations and citations omitted). In assessing whether expert testimony will assist the trier of fact, a court should also consider "whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.'" *Id*. at 476–77 (quoting *Rodriguez-Felix*, 450 F.3d at 1123).

Finally, Federal Rule of Evidence 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## II. Plaintiff's Challenges to the Opinions of Dr. Wortzel

In preparation for trial, Defendants hired Dr. Wortzel, an expert in neuropsychiatry. There is no dispute as to Dr. Wortzel's qualifications and experience to give an expert opinion. Dr. Wortzel completed his internship in orthopedic surgery in 2002, his residency in psychiatry at the University of Colorado School of Medicine (UC-SOM) in 2005, and his chief residency as Consultation-Liaison and Out-Patient Psychiatry at UC-SOM in 2005. ECF No. 47-1 Dr. Wortzel also completed fellowships at UC-SOM as follows: in Forensic Psychiatry in 2006, Behavioral Neurology & Neuropsychiatry in 2008, and Advanced Psychiatry in 2008. *Id*. Dr. Wortzel has been

5

board certified in Psychiatry since 2007, and in Behavioral Neurology & Neuropsychiatry and Forensic Psychiatry since 2009. *Id.*

Dr. Wortzel reviewed all relevant available medical records, performed a Fed. R. Civ. Pro. 35 examination of Plaintiff, and provided a corresponding 84-page report documenting his opinions related to Plaintiff's claimed injuries. *See* ECF No. 35-2. Dr. Wortzel's report includes a very detailed overview of Plaintiff's medical history, including all treatments and medical visits since the claimed injury.

It is fair to characterize Dr. Wortzel's general opinion of Plaintiff, her claimed symptoms stemming from the car accident, and her medical treatment with respect to her head injury, as "skeptical" in the extreme. For example, in reviewing the medical records of the Boulder Neurology and Concussion clinic, Dr. Wortzel starts with the following paragraph:

> Ms. Tracy's migration towards a cast of evaluators that routinely feature in mild TBI litigation of the present sort includes Boulder Neurology and Concussion, where we encounter another instance of their typical idiosyncratic approaches to evaluation and management of a possible concussion, in the context of mild TBI litigation.

*Id.* at 23.  Dr. Wortzel's evaluation of Plaintiff herself displays similar doubts:

> Though Ms. Tracy engages the evaluation in a overtly cooperative manner, in that she provides contextually appropriate responses to questions posed, it is impossible to not recognize the grossly suspect nature of various responses and claims featuring. The available records, and the present examination, reveal a rather extraordinary volume of competing and inconsistent statements/claims offered by Ms. Tracy across time and evaluators. Inconsistencies come in multiple forms, with statements that defy content from records, statements which defy objective findings or demonstrated capacities, and even statements that are internally inconsistent, meaning that Ms. Tracy controverts her own claims made at other intervals.
>
> Given the context of mild TBI litigation, inconsistencies pertaining to her inexplicable evolution of narrative regarding the accident at issue and

6

> requisite criteria for TBI (e.g., LOC, duration of amnesia), or various symptoms of such, represent a tremendous red flag.

*Id*. at 57. Dr. Wortzel's section describing his forensic neuropsychiatic impressions of the Plaintiff includes the following passage:

> Not only does Ms. Tracy's neuropsychiatric condition evolve in a manner that is entirely inconsistent with the natural history for mild TBI, but that evolution in illness comes in association with a similarly inexplicable evolution in narrative, and while gravitating towards a number of evaluators that routinely feature in mild TBI litigation of the present sort. Furthermore, that evolving illness and narrative culminates in an extraordinary volume of inconsistencies, and inconsistencies coming in various forms, meaning inconsistencies between claimed impairment versus apparent capacities, inconsistencies between self-reported history and content from medical records, and inconsistencies across competing narratives offered by Ms. Tracy across time and evaluators.

*Id*. at 64.

Indeed, Dr. Wortzel's opinion is that there is a strong probability that Plaintiff is malingering—exaggerating or fabricating her symptoms, or misattributing real symptoms to the relatively minor head injury in the car accident—in part because of "prominent litigation effects"; meaning that Plaintiff is exaggerating her illness to get compensation:

> Though records certainly establish a very significant burden of preexisting neuropsychiatric illness, to include what would appear to be largely untreated PTSD associated with some significant traumas (predating and unrelated to the accident at issue), and suggesting a very legitimate burden of ongoing neuropsychiatric illness and impairment, it is impossible to not recognize prominent litigation effects, meaning medical probabilities overwhelmingly in support of superimposed malingering, with efforts to exaggerate and/or misattribute illness and impairment to a compensable ideology.

*Id*. at 65. Later in the report, Dr. Wortzel is even more emphatic in his opinion that the Plaintiff is malingering:

7

> As previously suggested, there are now prominent red flags establishing medical probabilities overwhelmingly in support of malingering, particularly when compared to medical probabilities positing that a possible and modest concussion might account for the sort of illness and impairment, and associated course of illness, featuring in the case of Ms. Tracy. As already described in detail, the severity and patterns of impairment revealed across treatment records and the present examination are not just inconsistent with the natural history for concussion, but are rather spectacularly discrepant in the case of Ms. Tracy. It bears repeating: the course of illness revealed across records and the present examination defies the applicable natural history in every conceivable way, by virtue of the persistence, severity, nature, and trajectory of various complaints offered across time and evaluators.

*Id*. at 76. Among Dr. Wortzel's conclusions is the following:

> It is now impossible to escape the conclusion that medical probabilities overwhelmingly favor malingering in the context of mild TBI litigation, with efforts to feign, exaggerate, or misattribute illness and injury to the accident at issue. The opposing perspective, that any plausible concussion here might account for the sort of evolution of illness revealed across records and examination, approximates the implausible.

*Id.* at 82–84.

Plaintiff challenges Dr. Wortzel's proposed testimony in certain areas. First, Plaintiff argues that Dr. Wortzel should not be permitted to opine or reference redactions in Plaintiff's medical records. ECF No. 35 at 5–6. Plaintiff lists numerous instances of Dr. Wortzel's recitation of Plaintiff's medical history where the doctor comments on "a considerable amount of redactions." *Id*. at 6.

Second, Plaintiff objects to Dr. Wortzel being permitted to opine on "Witness Credibility," "Evolving Narrative," or "Litigation Effects." *Id*. at 8. The argument is that Dr. Wortzel is essentially "speculating" as to Plaintiff's credibility and potential motivations she may have for allegedly exaggerating the extent of her injuries or falsifying her symptoms, "without formally diagnosing her with Malingering." *Id.*

8

Third, Plaintiff objects to and seeks to exclude any testimony about potential motivations or previous involvement in litigation of Plaintiff's treating doctors and experts. *Id.* at 13.

### a. Dr. Wortzel's Comments on Redactions in Medical Records

Plaintiff argues that she has the right, under Colorado law, to appropriately redact personal medical information that is not relevant to the claims at issue, and it would be inappropriate for an expert to comment on those redactions as that might cause a jury to draw a negative inference that the Plaintiff was inappropriately trying to hide something. Per Plaintiff, "[r]ather than making inappropriate comments on the redactions, the proper procedure would have been for Defendants to challenge the redactions and Plaintiff's assertions of the physician-patient privilege." *Id*. at 6. She argues that Dr. Wortzel's commentary regarding redactions would be misleading to the jury and in violation of Fed. R. Evid. 403. *Id*. at 7.

The Court agrees with Plaintiff on this point. Colorado law recognizes the physician-patient privilege. Colo. Rev. Stat. § 13-90-107(1)(d). The purpose of the statutory privileges is to "encourage confidence" in particular relationships and the "preserve [them] inviolate . . . ." *Id.* § 13-90-107(1). It is true that when a party puts their medical condition at issue, they generally waive confidentiality with respect to *relevant* medical records. But filing suit over *one* medical condition does not mean that a plaintiff necessarily must turn over *all* unredacted medical records, including those unrelated to the injury at issue in the litigation.

Here, Defendants did not seek to compel unredacted versions of the medical records during the discovery period. Neither did Defendants make any request that the

9

Court review the redactions *in camera* to determine whether they were appropriate. Having failed to seek Court assistance in the production of the redacted portions of records, Defendants cannot, through their expert, use the redactions against Plaintiff at trial.

Defendants argue that the redactions are relevant to their affirmative defense of "failure to satisfy conditions precedent." ECF No. 47 at 12. Defendants assert that where they were requesting unredacted medical records pursuant to insurance-policy-required medical records authorizations, they may rely on their experts' opinions in determining "what additional information it needs to evaluate claims and why the information it has is inadequate." *Id*.

This is weak sauce indeed. First, Dr. Wortzel seems to have had no trouble in opining, based on the extensive medical records that *were* produced, that Plaintiff is a malingerer who is exaggerating her symptoms in order to get money in litigation, and that the scope and degree of her claimed injury is utterly inconsistent with what would be expected following a mild traumatic brain injury. And second, although he notes the existence of redactions, there is no explanation as to how he has been prevented from adequately evaluating Plaintiff's claimed injuries due to the redactions.

I agree with Plaintiff that having an expert testify about redactions in the medical records—which Defendants could have challenged or asked to be reviewed *in camera*—is more prejudicial than probative and should be excluded. Prohibiting the experts from commenting on redactions in the medical records will not unfairly or inappropriately limit Defendants' defense case. *See Carter v. Monger*, 19-cv-03555-GPG, 2022 WL 1115225, at *5 (D. Colo., April 14, 2022) (sustaining an objection to

testimony or comments about redactions in medical records, in part because if the defendant had wanted to challenge any redactions or assertions of physician-patient privilege, it could have done so through the Court, but did not), *Jamison v. Depositors Ins. Co.*, 4:14-CV-3009, 2016 WL 4443873, at *3 (D. Neb., August 22, 2026) (sustaining motion in limine objecting to "[a]ny reference to or comment upon any redaction contained in an exhibit, any inference to be drawn from the existence of the redaction, or any speculation as to what was redacted"); *Hutchinson v. Walmart, Inc.*, 19-cv-01496-SKC, 2020 WL 9075064, at *1 (D. Colo., Oct. 29, 2020) (sustaining motion in limine objecting to reference to redactions in medical records, and denying request to produce the unredacted records, because the requesting party never timely raised the issue via the Court's normal discovery dispute resolution procedures).

### b. Dr. Wortzel's Testimony on Credibility, Evolving Narrative, and Litigation Effects

Citing numerous passages from Dr. Wortzel's report that mention the "evolving narrative" of symptoms, Plaintiff argues that these statements, as well as many others that "suggest Plaintiff Tracey is being untruthful, exaggerating, or falsifying her symptoms for financial gain or to benefit this litigation, are inappropriate and must be excluded." ECF No. 35 at 11. Plaintiff asserts that these statements lack a scientific basis as each " not only . . . are based on Wortzel's own conjecture and speculation fueled by his bias against plaintiffs in general, but these statements violate Federal law, which prevents expert witnesses from commenting on the credibility of another witness." *Id.* (citing *United States v. Toledo*, 985 F.2d 1462, 1470 (10th Cir. 1993), and *United States v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001)).

Plaintiff's argument relies in large part on an order issued in *Carter v. Monger*, in which Judge Gordon P. Gallagher precluded Dr. Wortzel from articulating similar opinions in another mild TBI case. Judge Gallagher found that because Dr. Wortzel did not formally diagnose the plaintiff with "malingering," such testimony, as well as testimony about the "rather remarkable evolution in narrative," would be disallowed as violating Rules 702 and 403. 2022 WL 1115225, at *7. In *Carter,* Dr. Wortzel was free to opine that that there is "'simply no evidence to establish any significant neuropsychiatric injury as a consequence of the accident occurring on September 13, 2017' or that the 'course of illness revealed in subsequent treatment records is grossly incompatible with the natural history for mild TBI.'" *Id*.

Contrasted with the *Carter* decision is an opinion by Chief Judge Philip A. Brimmer in *Gould v. Union Pacific Railroad Co.*, No. 19-cv-02326-PAB-NRN, 2021 WL 4428286 (D. Colo., Sept. 27, 2021), where the court was again dealing both with a plaintiff who claimed significant adverse sequelae from a mild traumatic brain injury, and a defense expert opinion by Dr. Wortzel. Dr. Wortzel's opinion in that case was nearly identical to the opinion tendered in the instant case, in that he opined to a medical probability that the plaintiff's claimed symptoms were the result of malingering, and not the result of a concussion. The *Gould* plaintiff sought to exclude this testimony, arguing that it improperly infringed on the jury's function in that it involved an expert opining on the plaintiff's credibility.

Citing Dr. Wortzel's expert opinion from the *Gould* case, which quoted the *Diagnostic and Statistical Manual of Mental Disorders,* Chief Judge Brimmer rejected the plaintiff's argument, explaining that

12

> malingering is a psychiatric diagnosis that may be reached when the objective medical evidence does not support claimed symptoms. Dr. Wortzel, in developing his opinions on plaintiff's alleged malingering, cites a variety of studies that demonstrate the effect malingering has on neurological results. For example, one medical study shows that atypical results in neurological testing rarely are the result of mild traumatic brain injury ("mTBI"), but rather a host of other factors, such as litigation and malingering. That study shows that malingering is the number one predictor, with the pendency of litigation being the seventh predictor out of fifteen.

*Gould*, 2021 WL 4428286, at *7. Chief Judge Brimmer further elucidated:

> Dr. Wortzel utilizes these studies and the objective medical evidence in the record to provide context to his neurological assessment of plaintiff. Dr. Wortzel demonstrates a familiarity with plaintiff's alleged symptoms and the objective evidence to explain and interpret the results of his assessment. His general opinion is that, based on this objective evidence, the results of his testing show that the more likely explanation for plaintiff's claimed symptoms is malingering and the backdrop of litigation because the objective medical evidence does not comport with plaintiff's symptoms or her neurological testing results. Dr. Wortzel's expertise in the field and his explanation shows that his "methodology was otherwise reliably applied." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008); *see also Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1217-18 (noting that one factor to consider is whether the expert's methods have "been generally accepted by the scientific community" and that a plaintiff "need not prove that the expert is undisputably correct").

*Id*.

As to the argument that such testimony about malingering would constitute impermissible commentary on the credibility of the plaintiff, Chief Judge Brimmer noted that "[o]nly when an opinion on a plaintiff's credibility goes beyond a witness's expertise and impinges on the jury's function to determine credibility will such opinions be excludable." *Id.* In *Gould*, as in the present case, Dr. Wortzel was (and is) an expert in neuropsychiatry, and is properly opining "on the plaintiff's medical diagnoses, whether the claimed accident could cause plaintiff's injuries, and whether the medical record supports plaintiff's claimed injuries." *Id*.

13

The Court is persuaded that Chief Judge Brimmer's decision in *Gould* is equally applicable here, at least with respect to proposed testimony about malingering and Plaintiff's "evolving narrative of the course of the illness being entirely incompatible with the natural history for mild TBI." *See* ECF No. 35-2. Such testimony does not inappropriately infringe on or usurp the jury's function to determine whether Plaintiff should not be believed about her claimed symptoms. It is, instead, a medically-based opinion about the likelihood that Plaintiff's serious continuing symptoms are the result of a single bump on the head from a car accident years ago, or, instead, a result of something else, including fabrication, exaggeration, or the substantial burden of other preexisting conditions. These opinions have a scientific basis and are not based on Dr. Wortzel's "own conjecture and speculation." Such opinions will not be excluded but, rather, are fair game at trial for cross-examination and opposing expert testimony. *See Bamke v. J.B. Hunt Transp., Inc.*, No. 17-cv-1131, 2019 WL 8807888, at *4 (E.D. Wis. Oct. 22, 2019) (allowing an expert to opine on malingering as a possible diagnosis); *Bonds v. Padlock*, Civ. No. 06-7830, 2008 WL 4889794, at *4 (E.D. La. Nov. 10, 2008) (permitting an expert to testify on malingering to explain the plaintiff's symptoms).

### c. Dr. Wortzel's Testimony on Potential Motivations or Previous involvement in Litigation of Plaintiff's Treating Doctors and Experts

Plaintiff also challenges various portions of Dr. Wortzel's report that attack the integrity of Plaintiff's treating medical providers generally, describing them as part of a dark "network of evaluators that routinely feature in litigation." ECF No. 35 at 13 (citing ECF No. 35-2 at 32). According to Plaintiff, throughout his report, Dr. Wortzel references Plaintiff's providers' unrelated work in other cases with which Dr. Wortzel is familiar,

which involved different facts and different parties, in an attempt to bolster Dr. Wortzel's claims that Plaintiff's providers are "biased and unreliable." *Id*.

I agree with Plaintiff that testimony or comments by Dr. Wortzel about his view that Plaintiff's treaters were "obviously chosen in the context of litigation," *id*. at 15 (citing ECF No. 35-2 at 65), are not relevant. Dr. Wortzel may opine that Plaintiff's treaters did not use proper medical or psychiatric techniques in evaluating Plaintiff's concussion or her symptoms, but he may not comment generally on the individuals as the kinds of evaluators "who routinely feature in mild TBI litigation of the present sort," opine on the state of mild TBI litigation generally, or make comments about prior interactions with Plaintiff's treaters in other cases. Such opinions were excluded by Chief Judge Brimmer in the *Gould* case, and they will be here as well. *See Gould*, 2021 WL 4428286, at *9–10 (excluding opinions about opposing expert's "typical recommendation" or the use of a "network" of providers that support mild TBI litigation).

### III.   Plaintiff's Challenges to the Expert Opinions of Dr. Basse

Dr. Basse is an expert in physical medicine and rehabilitation (physiatry). This is branch of medicine that aims to enhance and restore functional ability and quality of life to people with physical impairments, disabilities, or chronic pain. Dr. Basse received an undergraduate B.S. Degree in Biology from the University of California, Irvine; a Masters in Public Health from U.C.L.A.; her medical education at the University of Health Sciences/Chicago Medical School; and did her internship and residency in physical medicine and rehabilitation at Baylor College of Medicine, Houston, Texas. She is Physical Medicine and Rehabilitation Board Certified, and is licensed by the American Board of Pain Medicine. She has served as an assistant instructor at both Department

15

of Physical Medicine and Rehabilitation, University of Colorado, and at the Department of Physical Medicine and Rehabilitation, Baylor College of Medicine, Houston, Texas. *See* ECF No. 34-2.

Dr. Basse conducted a records review and issued a detailed 65-page report. In summary, Dr. Basse's opinion is that Plaintiff

> could have sustained a mild cervical sprain/strain and mild concussive disorder with associated posttraumatic headaches at that time. All symptoms would be expected to resolve and/or at least significantly improve, within three months at most. Evaluation, diagnostic workup, and treatment for three months after the MVA through 09-28-2019 is considered reasonable, necessary, and related. All evaluations, workup, and treatment after 09-28-2019 are not MVA-related. They are related to continuation of her prior longstanding psychiatric disorders, progression of migraines, day-to-day activities, and additional injury.

ECF No. 34-3 at 65.

### a. Dr. Basse's Testimony on Malingering, Credibility, and Motivations

With respect to Dr. Basse's opinion about the low probability of severe long-term consequences from a mild concussion from years before, Plaintiff makes many of the same complaints as those directed at the opinion of Dr. Wortzel: that Dr. Basse is providing inappropriate, speculative opinions about Plaintiff's credibility and motivations by noting the inconsistencies in descriptions of her symptoms and the "evolving narrative." *See* ECF No. 34 at 5. Plaintiff also challenges whether Dr. Basse has the requisite qualifications to offer testimony on the issue of exaggeration or malingering. ECF No. 34 at 6.

The ruling on Dr. Basse's testimony about malingering, credibility, and motivations will be the same as the ruling on Dr. Wortzel's opinion. The motion will be denied because Dr. Basse is not merely commenting on "the credibility of another

16

witness," *id*., but drawing medical conclusions based on her review of the extensive medical record and her expertise and experience as a trained physiatrist. Moreover, in terms of her qualifications, "[p]sychiatric or psychological expertise is not necessary to qualify a physician to render an opinion on the issue of malingering as it relates to that physician's treatment and diagnosis of his patient's physical symptoms." *Bonds*, 2008 WL 488794 at *4 (allowing general family practitioner to testify on the issue of malingering for the accident at issue).

### b. Objection to Dr. Basse's Opinion as Cumulative

At oral argument on this motion, Plaintiff's counsel complained that it would be unfairly repetitive and cumulative to have Dr. Basse testify to exactly the same opinions as Dr. Wortzel, and further objected on that basis. *See, e.g.*, ECF No. 34 at 5 (Dr. Basse's opinion that she is "in agreement with Dr. Wortzel that with the inconsistencies and evolving course, that does not follow the usual typical course of her diagnoses, it is a challenge to know what subjective history is accurate and can be relied upon to determine medical legal issues and opinions").

The Court agrees that identical, reinforcing testimony from two defense expert physicians could be cumulative overkill, result in timewasting, and be unfairly prejudicial to Plaintiff. But that is a determination that should be made by the trial judge, who will be better able to evaluate the expert testimony as it is being presented at trial and assess whether it is cumulative and a waste of the jury's time. The motion in limine seeking to bar Dr. Basse's testimony on the ground that it is cumulative is denied without prejudice to re-raising the issue at trial.

### c. Dr. Basse's Testimony Regarding Alcohol Use Putting a Person at Increased Risk of Dementia

Plaintiff objects to Dr. Basse's rebuttal opinion disputing the opinion of Plaintiff's own expert, Dr. Allison Gray. The rebuttal report is found at ECF No. 34-4. Dr. Gray opined that due to the motor-vehicle accident and concussion, Plaintiff is at increased risk of dementia, making it more likely than not that, by the age of 60, Plaintiff "will require home health nursing assistance." ECF No. 34 at 7. In her rebuttal report, Dr. Basse includes the responsive comment, "While Ms. Tracy may have an increased risk of dementia for non-MVA reasons, including her extensive and significant history of alcohol abuse disorder, it is not medically probable that she will require the extent of home health nursing recommended." ECF No. 34-4 at 4.

Plaintiff objects that Dr. Basse is an expert in physical medicine and rehabilitation and lacks the requisite qualifications to offer testimony in the field of neurology. Plaintiff also argues that Dr. Basse cites no literature and does not explain the basis for her opinion that "Ms. Tracy's short term of alcohol use" has "now put her at increased risk of dementia." ECF No. 34 at 7–8. Plaintiff notes that, by contrast, Dr. Gray is a neurologist who cites several studies supporting the view that mild TBI is associated with dementia. *Id*.

The Court disagrees with Plaintiff. Dr. Basse may testify on this point and will be subject to cross-examination.  To be clear, she is not opining specifically that the Plaintiff is at increased risk of dementia due to alcohol abuse. The thrust of her very brief rebuttal comment is that it is not medically probable that Plaintiff "will require the extent of home health nursing recommended" as a result of the motor-vehicle accident and the associated mild TBI. ECF No. 34-4 at 4. To the extent that she is also saying

18

that Plaintiff has experienced other things in her life that are more likely to cause dementia than the motor vehicle accident and the mild TBI from that accident, such as substantial alcohol abuse, Dr. Basse can be cross examined on the basis for that opinion, or her lack of qualifications to give such an opinion. As a trained physician, she is more than capable of opining on the known causes of dementia.

Finally, to the extent that Plaintiff is objecting to the reference to Plaintiff's alcohol abuse as unduly prejudicial under Fed. R. Evid. 403, that is an objection better made at trial. It appears to be undisputed that Plaintiff has struggled in the past with alcohol abuse and has undergone appropriate treatment. It features prominently in her medical history and is part of Dr. Wortzel's opinion that her current symptoms may result, in part, from the burden of her "prior longstanding psychiatric disorders," rather than any claimed mild TBI. Any objection to references to Plaintiff's history of alcohol abuse, and what that may or may portend for her future, is better made at trial, where the trial judge can assess the context of such testimony and better gauge whether its probative value is outweighed by its unduly prejudicial effect.

## IV.  Conclusion

For the foregoing reasons, it is hereby **ORDERED** that

- Plaintiff's Motion to Exclude or Limit the Testimony of Dr. Rachel Basse, ECF No. 34, is **DENIED;** and

- Plaintiff's Motion to Exclude or Limit the Testimony of Dr. Hal Wortzel, ECF No. 35, is **DENIED IN PART AND GRANTED IN PART**. Specifically, the motion is granted to the extent that Dr. Wortzel will not be permitted to testify about the redactions in Plaintiff's medical records, nor will he be permitted to testify about

his views on the potential motivations or previous involvement in litigation of Plaintiff's treating doctors or experts. Otherwise, the motion is denied.

Date: July 23, 2025

_N. Reid Neureiter_
N. Reid Neureiter
United States Magistrate Judge